Christopher Reichman (CA 250485)
PRATO & REICHMAN, APC
3737 Camino del Rio South, Suite 303
San Diego, CA 92108
Telephone: 619-683-7971
Facsimile: 619-241-8309
ChrisR@Prato-Reichman.com

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, | CASE NO. CV12-6257 EJD |
| Plaintiff, | **PLAINTIFF'S PRELIMINARY PRETRIAL CONFERENCE STATEMENT** |
| vs. | |
| MAXIMUM SECURITY ALARM, INC., ANDREW N. HIGGINS, 1TO1 SALES GROUP, LLC, SAVANTIUS, LLC, REVOCALIZE, LLC, BEN GEORGE, and JODY ROOKSTOOL, | Preliminary Pretrail Conference<br>Date: March 7, 2014<br>Time: 11:00 a.m. |
| Defendants. | *Assigned to the Hon. Edward J. Davila* |

Pursuant to the Court's Standing Order re Preliminary And Final Pretrial Conferences And Trial Preparation In Civil Cases, Plaintiff Paul Sapan ("Mr. Sapan") submits this Plaintiff's Scheduling Conference Report. Plaintiff's counsel explains why the parties did not attend a settlement conference and failed to prepare a Joint Preliminary Pretrial Statement in the attached supporting Declaration of Christopher J. Reichman, which should perhaps be read first.

- 1 -
**PLAINTIFF'S PRELIMINARY PRETRIAL CONFERENCE STATEMENT**
**CASE NO. CV12-6257 EJD**

**Posture of Case**

This case arises out of a case brought in Los Angeles Superior Court between Plaintiff Paul Sapan and Defendants Maximum Security Alarm, Inc., Andrew N. Higgins (*Sapan v. Maximum Security Alarm, et. al.*, Los Angeles Superior Court Case #SC112977).  Discovery in that case initially indicated that the other Defendants, 1to1 Sales Group, LLC, Savantius, LLC, Revocalize, LLC, Ben George, and Jody Rookstool (collectively, the "Savantius defendants"), should be made parties.  Unfortunately the budget pressures on the California Superior Court systems tied with the requirement to resolve cases within one year militated strongly against expanding that case.  Plaintiff Paul Sapan and Defendants Maximum Security Alarm, Inc., Andrew N. Higgins decided to dismiss the state court case without prejudice and file the instant case with the new Defendants before this Court.

During the course of discovery in this action it has become clear that the defendants that should have been added were not the Savantius defendants, but the defendants in a larger class action case regarding the same sort of calls complained of here.  Namely, the defendants that should have been added are those named in *In Re Monitronics International, Inc. Telephone Consumer Protection Act Litigation*, MDL No. 1:13-MD-2493 (Northern Dist. West Virginia) ("*In Re Monitronics*").

Plaintiff Paul Sapan's Complaint alleges that Maximum Security Alarm made and continues to make telemarketing calls to Mr. Sapan in violation of TCPA provisions against prerecorded telemarketing calls and calls to a number on the federal "Do Not Call" list.  Every one of the calls in this case attempted to sell Mr. Sapan a home alarm touted as being monitored by Monitronics International, Incorporated and made by "GE Security", a trade name of UTC Fire and Americas Corporation.  Mr. Higgins and his Maximum Security Alarm, Inc. ("Maximum Security defendants") are local installation representatives for GE Security alarms with Monitronics monitoring.  Local representatives like the Maximum Security defendants contract with call centers to transmit "lead calls" and then "hot transfer" any calls where the target shows interest in order to sell these.  There are many such local dealers, like the VMS/Alliance defendant in the *In Re Monitronics* case, that were and are part of a nationwide junk calling campaign.  While these local dealers have direct liability for contracting to have the calls made, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations."  *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Mem. and Order, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).  Therefore, liability for these calls which touted the GE Security manufacturer and Monitronics monitoring service lies with those two companies as well as with Maximum Security.

Before conducting discovery in this action, Plaintiff had discovery from the Maximum Security defendants indicating that the Savantius defendants might be the organizing force behind this spate of junk alarm sales calls, however discovery with them indicated this was not the case. Plaintiff intends to move dismiss the Savantius defendants from this case before trial. Plaintiff also intends to name GE Security and Monitronics and file a notice of pendency of other action or proceeding pursuant to Local Civil Rule 3-13 as well as a motion to transfer or coordinate pursuant to 28 U.S.C. § 1407, since he now realizes that he and his case are part of that larger class action.

**1) Jurisdiction:**

Federal question subject matter jurisdiction arises under 47 U.S.C. § 227 and 47 C.F.R. §§ 64.2100 *et seq.*

**2) Concise Statement of Factual and Legal Basis of Claims and Defenses:**

This is a case about junk telemarketing calls made to Plaintiff Paul Sapan's home phone number. Mr. Sapan has received sixteen (16) prerecorded and six (6) live solicitation calls which he alleges were transmitted by Defendants. Plaintiff contends these calls violate the Telephone Consumer Protection Act of 1991 ("TCPA"). Defendants Maximum Security Alarm, Inc., Andrew N. Higgins ("Defendants") admit they made a few of the live calls but contend they had an

established business relationship and/or consent—both complete defenses—to make those calls. Defendants contend they are not responsible for any prerecorded calls made to Plaintiff attempting to sell Monitronics alarms which were not actually "hot transferred" to them. Plaintiff intends to stipulate to dismissal of the Savantius defendants, so contentions involving them are now moot.

The primary factual or mixed law and fact issues are:

a. Whether Defendants called Mr. Sapan's home phone on the dates and times alleged.

b. Whether Defendants contractual relationships with call centers to sell Monitronics alarms make them liable for the calls made by those call centers even if the call was not hot transferred to Defendants, i.e. if the call went unanswered.

c. Whether and when Mr. Sapan had an express business relationship with Defendants or gave Defendants express written consent to call him.

d. Whether and when Mr. Sapan revoked any express business relationship or consent to call with Defendants.

**3)    Legal Issues:**

Whether Defendants' calls, if found violative of the TCPA, were "willful" or "knowing" within the meaning of the Communications Act of 1934.

**4)    Prior or Pending Motions:**

There are no prior or pending motions. Plaintiff intends to bring a motion to amend the Complaint to add Monitronics and GE Security and a stipulated motion to dismiss the Savantius defendants. Plaintiff also intends to file a notice of pendency of other action a motion to transfer or coordinate this action with the larger *In Re Monitronics* case since Plaintiff fits within that putative class.

**5)     Discovery Status:**

Plaintiff has conducted significant informal discovery with the Savantius defendants including the exchange of documentary evidence and execution of affidavit regarding the limited role of those defendants in this case. Plaintiff conducted written discovery with the Maximum Security defendants in the state court case which preceded this matter. Plaintiff intends to conduct further written discovery and take at least the deposition of Mr. Higgins, but has been delaying both due to learning about the *In Re Monitronics* case, the challenges of gathering information from that case to determine relatedness, and a desire to avoid discovery that would be duplicative of the efforts already taken in the more advanced class action case. Plaintiff also intends to obtain the significant written discovery already produced by the *In Re Monitronics* defendants either as part of normal disclosures when the actions are related or via third party subpoena if this Court is not ready to take those steps at this time.

**6)     Settlement And ADR:**

The Parties believe prospects for settlement are relatively low. Plaintiff Sapan and Defendants Maximum Security Alarm, Inc., Andrew N. Higgins already attended mediation in the prior state court case and were not able to reach agreement at that time. The parties missed their deadline to conduct a settlement conference in this action in part because there has not been any significant settlement movement even as we learned of the relation of the *In Re Monitronics* case and the role of the Savantius defendants was brought more clearly into focus. Given the fact that this case is actually part of a much larger case involving all of the alarm sales calls made on behalf of GE Security and Monitronics, settlement with the Maximum Security defendants outside of that larger context is probably unlikely in this case as it stands now.

**7)  Bifurcation and Separate Trial of Issues:**

Plaintiff cannot reasonably speak to the need to separate trial of issues at this time because the current case is missing vital parties, namely the *In Re Monitronics* defendants. It is very likely that separate trial of issues would be efficient in a case where agency law is likely to control which persons are liable for the calls at issue in this case. Where the agency relationship controls liability, handling that issue as a preliminary matter before continuing to the disputed issues of fact regarding the calls themselves could be a very effective trial mechanism.

In the event this case had to proceed only against the Maximum Security defendants, Plaintiff cannot see how a separation of trial issues would be needed, except for the fact that the Maximum Security defendants would be very likely to attempt to shift blame to parties not part of such a limited action.

**8)   Trial Readiness:**

    **A.   Plaintiff Paul Sapan**

Plaintiff is not ready for trial.  Plaintiff has conducted formal written discovery with the Maximum Security defendants in the prior case, which formed their Rule 26(f) disclosures in this action.  Plaintiff has conducted significant informal discovery with the Savantius defendants producing documentary evidence and affidavit testimony and plans to stipulate to their dismissal since they have no apparent liability in this action.  Discovery and filings in the the *In Re Monitronics* case <u>strongly</u> indicates that this case involving calls squarely within that class description should be coordinated with that case or, at a minimum, that those defendants be named in this case to replace the Savantius defendants.  Plaintiff suggests that the new information regarding the close relation of this case with the larger class action case strongly militates in favor of postponing trial as well as motion and discovery deadlines to allow motions to be brought to explore the proper relation of this case to the larger class action.

If absolutely pressed, Plaintiff could proceed to make its prima facie case against the Maximum Security defendants given the evidence in its possession at this time, however Plaintiff would be quite limited in his ability to contest any defensive theories those Defendants would promote based on agency relationship or lack thereof with persons who are currently non-parties to this action.  Plaintiff could not proceed against the Savantius defendants and at this time given the aid of significant talks and discovery with them that those defendants are responsible for the Plaintiff's claims.

### B.   Maximum Security Defendants

[Plaintiff was unable to coordinate a response with these Defendants in the short time from the Court's February 28, 2014 order.  Plaintiff's counsel admits that failure to coordinate with them earlier was entirely his fault].

### C.   Savantius Defendants

[Plaintiff was unable to coordinate a response with these Defendants in the short time from the Court's February 28, 2014 order.  Plaintiff's counsel admits that failure to coordinate with them earlier was entirely his fault].

**9)   Scheduling:**

Mindful of his counsel's scheduling mistakes in prosecution of this case, Plaintiff's counsel suggest the following modification of the Court's July 15, 2013 Case Management Order:

Deadline to move to amend Complaint to name new parties and file a stipulated motion to dismiss the Savantius defendants: March 24, 2014.  Deadline to file a notice of pendency of other action or proceeding and motion to transfer and consolidate: April 14, 2014.

Plaintiff suggests all other deadlines in the  Court's July 15, 2013 Case Management Order be extended at least 90 days to accommodate these motions on the theory that if the case is transferred or coordinated with the larger class action, these deadlines will be unnecessary, and if the Court decides against Plaintiff's motions, we can proceed to whatever trial may result with a minimum of further delay.

DATED: March 3, 2014                            PRATO & REICHMAN, APC


                                                 ___Christopher J. Reichman_____
                                                 By: Christopher J. Reichman, Esq.
                                                 Prato & Reichman APC
                                                 Attorneys for Plaintiff
                                                 PAUL SAPAN